Anne M. Bevington (SBN 111320)
Allan D. Shuldiner (SBN 252259)
Craig L. Schechter (SBN 308968)
SALTZMAN & JOHNSON LAW CORPORATION
1141 Harbor Bay Parkway, Suite 100
Alameda, CA 94502
Telephone: (510) 906-4710
Email: abevington@sjlawcorp.com
Email: ashuldiner@sjlawcorp.com
Email: cschechter@sjlawcorp.com

Attorneys for Plaintiffs Pension Plan for
Pension Trust Fund for Operating Engineers, et al.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS; JAMES E. MURRAY and DAN REDING, as Trustees,

Plaintiffs,

vs.

RC KNAPP, INC., a suspended California corporation; and DOES 1-10,

Defendants.

Case No.

**COMPLAINT**

**INTRODUCTION**

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C §§1001-1461 (1982).

Withdrawal Liability

In order to protect plan participants and the Federal Pension Benefit Guaranty Corporation, effective September 26, 1980, Congress created withdrawal liability for employers that withdraw from multiemployer pension plans in a complete or partial withdrawal. Due to the importance Congress attributed to those goals, it included two special provisions not generally available to creditors to ensure that withdrawal liability could actually be collected.

Under ERISA §4001(b)(1), 29 U.S.C. §1301(b)(1), all trades or business under common control are to be treated as a single employer. Thus, members of the withdrawn employer's controlled group are jointly and severally liable for the withdrawal liability. *Bd. of Trs. of W. Conf. Pension Trust Fund* v. *LaFrenz,* 837 F.2d 892, 894 (9th Cir. 1988); *Bd. of Trs. of W. Conf. Pension Trust Fund* v. *H.F. Johnson, Inc.*, 830 F.2d 1009, 1013 (9th Cir. 1987).

ERISA also contains a mandatory arbitration provision if an employer wishes to challenge the withdrawal liability determination. To make such a challenge, an employer must request review within ninety (90) days from receiving the notice of the withdrawal liability assessment pursuant to ERISA § 4219(b)(2), 29 U.S.C. § 1399(b)(2), and any dispute concerning the pension plan's determination of withdrawal liability must be resolved through arbitration timely initiated under ERISA § 4221(a), 29 U.S.C. § 1401(a).

Defendant RC Knapp, Inc. ("RCK"), a California corporation, was a participating employer in the Pension Plan for Pension Trust Fund for Operating Engineers ("Pension Plan"). In or about June 2014, RCK incurred a complete withdrawal from participation in the Pension Plan, thereby triggering the Pension Plan to assess withdrawal liability against RCK and all members of its controlled group for the sum of $384,079.00 under ERISA §4205(a)(1) and (b)(1), 29 U.S.C. §1385(a)(1) and (b)(1). By letter dated February 27, 2020 ("Assessment"), Plaintiff Pension Plan notified RCK of the assessed withdrawal liability.

On April 20, 2020, Plaintiffs notified RCK that because RCK's corporate status was suspended and its contractors' license had expired, and that it had not made its first quarterly withdrawal liability payment, the Pension Plan accelerated the entire unpaid withdrawal liability.

Defendant RCK did not request review of the assessment or initiate arbitration. As of the filing of this Complaint, RCK is in default on the outstanding withdrawal liability. Plaintiffs therefore seeks a money judgment against RCK and each member of RCK's controlled group for an award of the entire assessed withdrawal liability, plus the mandatory add-ons of interest on the unpaid withdrawal liability, an amount equal to the greater of interest or liquidated damages of 20%, reasonable attorney's fees and costs of the action.

///

Failure to Provide Requested Information

ERISA § 4219(a), 29 U.S.C. § 1399(a), requires an employer to provide the pension plan with all information the pension plan reasonably determines to be necessary to enable the plan sponsor to comply with the requirements of Title IV of ERISA, including the determination and collection of withdrawal liability. The Pension Plan requested information concerning RCK's controlled group, which Defendants have not provided, in violation of ERISA § 4219(a), 29 U.S.C. § 1399(a). The Pension Plan therefore seeks an order compelling Defendants to provide the requested information.

**PARTIES**

1. The Pension Plan is an employee benefit plan as defined in ERISA §3(3), 29 U.S.C. §1002(3), an "employee benefit pension plan" as defined in of ERISA §3(2), 29 §U.S.C. 1002(2); and a "multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3), 29 U.S.C. §§1002(37) and 1301(a)(3). The Pension Plan is jointly administered and is maintained pursuant to the Labor Management Relations Act §302(c), 29 U.S.C. §186(c).

2. Plaintiffs James E. Murray and Dan Reding are members of the Board of Trustees of Pension Plan, the "plan sponsor" within the meaning of ERISA §§3(16)(B)(iii) and 4001(a)(10)(A), 29 U.S.C. §§1002(16)(B)(iii) and 1301(a)(10)(A). They are therefore, fiduciaries of the Pension Plan under ERISA §§3(21)(A) and 402(a), 29 U.S.C. §1002(a). As Trustees of the Pension Plan, they are empowered to bring this action on behalf of the Pension Plan pursuant to ERISA §4301(a)(1) - (b) and §502(a)(3), 29 U.S.C. §§1132(a)(3) and 1451(a)(1) - (b).

3. Defendant RCK is a suspended California corporation with a business address of 360 Park Boulevard in Richmond, California 94801. RCK is an employer within the meaning of ERISA §3(5), 29 U.S.C. §1002(5) and National Labor Relations Act ("NLRA") §2(2), 29 U.S.C. §152(2), and is engaged in an industry affecting commerce within the meaning of ERISA §§3(11) and (12), 29 U.S.C. §§1002(11) and (12).

4. Defendants DOES 1 through 10 are entities and/or other persons that are within the same controlled group as RCK under ERISA §4001(b)(1), 29 U.S.C. §1301(b)(1). RCK has failed to provide sufficient information regarding the identities of entities and persons within the same

controlled group as RCK as requested by Plaintiffs in accordance with ERISA §4219(a), 29 U.S.C. §1399(a). Thus, Plaintiffs presently do not know the identities of such entities or persons. Plaintiffs are using fictitious names for the Defendants because Plaintiffs are unable to ascertain their true identity at this time. Pursuant to Fed. R. Civ. Proc. 15(a), Plaintiffs will amend the Complaint to add the true name of the additional defendants once their identities are discovered.

**JURISDICTION**

5. Jurisdiction is conferred upon this Court over the claims asserted by the Plaintiffs by virtue of ERISA §§4301(c) and 502, 29 U.S.C. §§1451(c) and 1132. Plaintiffs seek to enforce the provisions of ERISA and the terms of their plans, redress Defendants' violations of ERISA, and all other appropriate legal or equitable relief under ERISA

6. To the extent jurisdiction over any claim does not exist under ERISA, supplemental jurisdiction exists in this Court over such claims by virtue of 29 U.S.C. § 1367 in that they arise out of a common nucleus of operative facts that form the basis of the federal claims asserted herein, each of which has a substantial ground in federal jurisdiction.

**VENUE**

7. Venue is conferred upon this Court by ERISA §§4301(c) and 502(e)(1), 29 U.S.C. §§1451(d) and 1132. Where an action is brought under ERISA §§4301 and 502, 29 U.S.C. §§1451 and 1132 in a district court of the United States, it may be brought at Plaintiffs' discretion, in the district where the Plan is administered, where the breach took place, or where a defendant resides or may be found. Process may be served nationwide in any district where a defendant resides or may be found. The Plaintiff Pension Plan, on whose behalf the Trustees brings this action, is administered in this district at its principal place of business in Alameda, California. Thus, jurisdiction and venue are properly grounded with this Court.

**INTRADISTRICT ASSIGNMENT**

8. Assignment to the San Francisco/Oakland Division is appropriate pursuant to Civil Local Rule 3-2(d) because a substantial part of the events and omissions giving rise to the Plaintiffs' claims occurred in Alameda County, California where the Plaintiff Trust Funds are administered.

**FACTUAL ALLEGATIONS**

9. Defendant RCK was a participating employer in the Plan pursuant to a collective bargaining agreement ("Bargaining Agreement") with the Operating Engineers Local Union No. 3 ("Union"). The Union is a labor organization as defined in the NLRA § 2(5), 29 U.S.C. § 152(5), that represents employees in an industry affecting interstate commerce. RCK was obligated and did make contributions to the Plan on behalf of its employees that were covered under the Bargaining Agreement.

10. In or about June 2014, RCK made a complete withdrawal from participation in the Pension Plan under ERISA §4203, 29 U.S.C. §1383.

11. Plaintiffs are informed and believe that RCK's California contractor's license is currently expired.

12. Plaintiffs are informed and believe that RCK registered with the California Secretary of State on April 30, 1990 and that RCK's status with the California Secretary of State is currently FTB Suspended.

13. By written notice dated February 27, 2020 ("Assessment"), Plaintiff Pension Plan notified RCK of the withdrawal liability assessed pursuant to ERISA §§4201-4203, 29 U.S.C. §§1381, et seq. Specifically, the Pension Plan notified RCK of the following in its Assessment, which is attached hereto as **Exhibit 1** and incorporated herein by this reference:

(a) The Pension Plan had a fiscal year running from January 1 through December 31 and therefore, the withdrawal liability is calculated as of December 31, 2013, as required by ERISA §4211(b)(2)(A), 29 U.S.C. §1391(b)(2)(A).

(b) The withdrawal liability of RCK in the amount of $384,079.00 could have been paid in a lump sum on or before April 1, 2020, or in quarterly installments as follows:

| | |
|---|---|
| $18,815.50 | April 1, 2020 |
| $18,815.50 | July 1, 2020 |
| $18,815.50 | October 1, 2020 |
| $18,815.50 | January 1, 2021 |
| $18,815.50 | Each successive quarter through January 1, 2026 |
| $6,660.04 | April 1, 2026 |

(c) RCK had the option of challenging the calculation of the withdrawal liability

by requesting review within ninety (90) days from receiving the initial or further notice of the withdrawal liability assessment as provided by ERISA §4219(b)(2), 29 U.S.C. §1399(b)(2).

(d) Any dispute concerning a determination of withdrawal liability must be resolved through arbitration provided that the employer requested review and arbitration was timely initiated under ERISA §4221(a), 29 U.S.C. §1401(a).

(e) Information and documents relating to all trades and businesses under common control with RCK were required to be provided within thirty (30) days pursuant to ERISA §4219(a), 29 U.S.C. §1399(a).

14. In order to initiate arbitration under ERISA §4221(a)(1), 29 U.S.C. §1401(a), an employer must first request review of the assessed withdrawal liability. Section XIV of the Pension Plan's Withdrawal Liability Procedures mirrors ERISA §4219(b)(2)(A), 29 U.S.C. §1399(b)(2)(A), which requires an employer's request for review to be in writing. Neither RCK, nor any member of its controlled group, requested review and therefore they are precluded from initiating arbitration and the time to do so has expired.

15. Neither RCK nor any member of its controlled group made any of the required quarterly installment payments, or provide sufficient information regarding controlled group members.

16. On April 20, 2020, Plaintiffs notified RCK in writing that, pursuant to Section XII of the Pension Plan's Withdrawal Liability Assessment procedures (attached as Exhibit B to the February 27, 2020 Notice of Assessment), ERISA § 4219(c)(5)(b), 29 U.S.C. §1399(c)(5)(b) and PBGC § 4219.31(b)(2), the entire unpaid withdrawal liability was accelerated, and the entire unpaid amount of $384,079.00, plus interest and liquidated damages, was immediately due and payable, because RCK's corporate status was suspended, its contractor's license was expired and it had failed to make its quarterly installment payment of $18,815.50, which indicated a substantial likelihood that it would be unable to pay its withdrawal liability. This written notice dated April 20, 2020 is attached hereto as **Exhibit 2** and incorporated herein by this reference. As of the filing of this Complaint, Defendants have not made any of the required withdrawal liability payments and thus are in default under ERISA §4219(c)(5), 29 U.S.C. §1399(c)(5).

**FIRST CAUSE OF ACTION**
**By the Pension Plan and its Trustees Against Defendants for Violation of ERISA §4219, 29 U.S.C. §1381: Request for Payment of Withdrawal Liability, Interest, Liquidated Damages, Attorneys' Fees and Costs**

17. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 18, above.

18. In or about June 2014, Defendant RCK made a "complete withdrawal" from the Pension Plan as that term is defined in ERISA §4203, 29 U.S.C. §1383, et seq.

19. On February 27, 2020, Plaintiffs assessed withdrawal liability against Defendant RCK, and all members of Defendant RCK's controlled group, named here as DOES 1 – 10, and thereafter declared Defendants to be in default and accelerated payments pursuant to ERISA § 4219(c)(5)(b) and PBGC § 4219.31(b)(2),

20. To date, Defendants have not paid any of the assessed withdrawal liability. Thus, Defendants and each other member within RCK's controlled group, are in default and are jointly and severally liable for the entire amount of the unpaid withdrawal liability under ERISA §§ 4219(c)(5) and 4001(b)(1), 29 U.S.C. §§1399(c)(5) and 1301(b).

21. Accordingly, Plaintiffs seek judgment against Defendants for the entire amount of the unpaid withdrawal liability of $384,079.00, plus accrued interest from the due date of the first delinquent payment pursuant to ERISA §§4219(c)(5) and 502(g)(2), 29 U.S.C. §§1399(c)(5) and 1132(g)(2).

22. ERISA §4301(b), 29 U.S.C. §1451(b) provides that an action involving an employer's failure to timely make withdrawal liability payments shall be treated in the same manner as a delinquent contribution within the meaning of ERISA §515, 29 U.S.C. §1145. Thus, Defendants are also liable for interest, liquidated damages and costs, including reasonable attorneys' fees, pursuant to ERISA §§4301(b) and 502(g)(2), 29 U.S.C. §§1301(b) and 1132(g)(2). The Pension Plan provides for interest at the rate of 10% per annum, and for liquidated damages in an amount equal to the greater of 20% of the total unpaid withdrawal liability or interest on the total unpaid withdrawal liability.

23. The Pension Plan, therefore, seeks a money judgment against Defendants for an award of the entire balance of the unpaid withdrawal liability less any credits for recoveries

received before the time of judgment, plus interest, an amount equal to the greater of interest or liquidated damages, and costs, including attorneys' fees.

**SECOND CAUSE OF ACTION**
**By the Pension Plan and its Trustees Against Defendants for Violation of ERISA §4219(a), 29 U.S.C. §1399(a): Failure to Provide Required Information under ERISA**

24. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 23, above.

25. In violation of ERISA §4219(a), 29 U.S.C. §1399(a), Defendant RCK has failed to provide the Pension Plan with all necessary information requested by the Pension Plan relating to any member within RCK's controlled group under ERISA §4001(b)(1), 29 U.S.C. §1301(b)(1) and any transactions to evade its withdrawal liability under ERISA §4212, 29 U.S.C. §1392.

26. The failure of Defendants to make the quarterly withdrawal liability payments and provide information regarding controlled group members in accordance with ERISA §4219(c)(2), 29 U.S.C. §1399(c)(2) has caused the Pension Plan to sustain loss of investment income and incur administrative and legal expenses.

27. Defendants' failure to comply with the law has caused the Pension Plan to suffer immediate, continuing, and irreparable injury, and Plaintiff Pension Plan is without an adequate remedy at law.

28. Due to Defendants' failure to provide sufficient information, Pension Plan is required to name its unknown controlled group members as fictitious defendants until their true identities can be discovered.

29. Thus, injunctive relief as prayed for below is proper.

**PRAYER**

WHEREFORE, Plaintiffs pray for the following relief:

1. For a judgment in favor of the Pension Plan and its Trustees providing that Defendants RCK and DOES 1 through 10 are jointly and severally liable to immediately pay to the Pension Plan the following sums:

(a) The unpaid withdrawal liability of $384,079.00, less any credits for recoveries received before the time of judgment;

(b) Interest at the rate of 10% simple interest per annum pursuant to ERISA §§4219(c)(5)-(6) and 502(g)(2), 29 U.S.C. §§1399(c)(5) and (6) and 1132(g)(2);

(c) Pursuant to ERISA §§4301(b) and 502(g)(2), 29 U.S.C. §§1451(b) and 1132(g)(2), liquidated damages equal to the greater of:

i. The accrued interest on the unpaid withdrawal liability as of the due date of the first withdrawal installment payment which was not timely made, or

ii. An amount equal to twenty percent (20%) of the amount of unpaid withdrawal liability; and

(d) Attorneys' fees and costs incurred by the Pension Plan in connection with this action as required by ERISA §§4301(e) and 502(g), 29 U.S.C. §§1451(e) and 1132(g).

2. For an order finding Defendants DOES 1 through 10 jointly and severally liable for the withdrawal liability, interest, liquidated damages, attorneys' fees, and costs.

3. For injunctive relief ordering Defendants to provide all of the documentation and information requested by the Pension Plan, including but not limited to information regarding all trades or businesses which are within Defendant RCK's controlled group as defined in ERISA §4001(b)(1), 29 U.S.C. §1301(b), and any transactions to evade its withdrawal liability under ERISA §4212, 29 U.S.C. §1392.

3. Such other relief as this Court deems appropriate.

Dated: July 7, 2020

SALTZMAN & JOHNSON
LAW CORPORATION

By: /S/ Craig L. Schechter
Craig L. Schechter
Attorneys for Plaintiffs

# Exhibit 1



OE3 Trust Funds
Health. Security. Service.

Operating Engineers Trust Funds
1600 Harbor Bay Parkway, Suite 200, Alameda, CA 94502-3035
P.O. Box 23190, Oakland, CA 94623-0190
(800) 251-5014 • OE3trustfunds.org

VIA CERTIFIED MAIL
(WITH RETURN RECEIPT REQUESTED)
AND FIRST CLASS MAIL

February 27, 2020

Richard Christopher Knapp
R.C. Knapp, Inc.
340 Part Blvd.
Richmond, CA 94801

Richard Christopher Knapp
R.C. Knapp, Inc.
P.O. Box 20730
El Sobrante, CA 94820

Richard Christopher Knapp
R.C. Knapp, Inc.
4070 Val Verde Rd.
Loomis, CA 95650-9401

RE: Pension Plan for the Pension Trust Fund for Operating Engineers – **This letter replaces the letter dated February 25, 2020.**

Dear Mr. Knapp:

## I. Withdrawal Liability

On or about June 2014, R.C. Knapp, Inc. ("RCK") made a complete withdrawal under ERISA §4203(a) (29 U.S.C. §1383(a)) from the Pension Plan for the Pension Trust Fund for Operating Engineers ("Plan"), a multiemployer defined benefit pension plan. The Plan has a fiscal year running from January 1, through December 31, therefore the withdrawal liability is calculated as of December 31, 2013, as required by ERISA §4211(b)(2)(A) (29 U.S.C. §1391(b)(2)(A)). As of that date the withdrawal liability of RCK is $384,079.00 payable in quarterly installments of $18,815.50.

## II. Assessment of Withdrawal Liability

ERISA §4202 (29 U.S.C. §1382) requires that when an employer withdraws from a multiemployer plan the Board of Trustees shall determine the amount of withdrawal liability, notify the employer of the amount, and collect the amount of the withdrawal liability from the employer. Under ERISA §4201 (29 U.S.C. §1381) a withdrawn employer including all members of its controlled group (and any successors or alter egos) is liable to the Plan for the amount of its withdrawal liability. Because the Plan primarily covers employees in the building and construction industry it must use the presumptive method described in ERISA §4211(b) (29 U.S.C. §1391(b)) in calculating the amount of withdrawal liability.

A. Unfunded Vested Benefits Under ERISA §4211(b) (29 U.S.C. §1391(b)) withdrawal liability is based on a plan's unfunded vested benefits allocable to the employer. RCK

withdrawal liability was calculated under the provisions of ERISA §4211(b)(1)(A) (29 U.S.C. §1391(b)(1)(A)), which requires allocating the unamortized change in the Plan's unfunded vested benefits after June 30, 1980. The computation of that amount is shown to be $384,079.00 on the enclosed ***Exhibit A***.

B. Payment of Withdrawal Liability Payment of withdrawal liability is governed by ERISA §4219(c) (29 U.S.C. §1399(c)). The annual payment calculated under subsection (1)(C) is $75,261.98. This results in 24 quarterly payments of $18,815.50, and a final payment of $6,660.04 under ERISA §4219(c)(3) (29 U.S.C. §1399(c)(3)).

C. Assessment of Withdrawal Liability RCK, and each member of its controlled group (and any successor or alter egos), jointly and severally, are hereby assessed a withdrawal liability of $384,079.00 payable in one lump sum before April 1, 2020, or installments payable as follows:

| Amount of Installment | Due Date |
|---|---|
| $18,815.50 | April 1, 2020 |
| $18,815.50 | July 1, 2020 |
| $18,815.50 | October 1, 2020 |
| $18,815.50 | January 1, 2021 |
| $18,815.50 | Each following quarter through January 1, 2026 |
| $6,660.04 | April 1, 2026 |

D. Payment Address

Payment of withdrawal liability should be made by check payable to: "Operating Engineers Pension Plan" and mailed to the following address:

Operating Engineers Pension Plan
Withdrawal Liability Payment Account
Zenith American Solutions, Inc.
Attention: Greg Trento
1600 Harbor Bay Parkway, Suite 200
Alameda, California 94502

## III. Appeal Procedure

Pursuant to ERISA §4219(b)(2) (29 U.S.C. §1399(b)(2)) within 90 days after receipt of this letter RCK may ask the Board of Trustees to review any specific matters relating to the determination and schedule of payments, identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocation, and may furnish any additional relevant information to the Board. Please note than under ERISA §4219(c)(2) withdrawal liability is

payable in accordance with the above schedule, notwithstanding any request for review or appeal of determination of the amount of the liability or schedule of payments.

Under ERISA §4221(a) (29 U.S.C. §1401(a)) any dispute concerning a determination of withdrawal liability is to be resolved through arbitration. If you want to initiate arbitration you must do so within the 60 day period after the earlier of 120 days after you make a request under ERISA §4219(b)(2)(A) described above, or the date the Board notifies you of its decision in response to your request. Please note that under ERISA §4221(d) (29 U.S.C. §1401(d)) RCK must make the required withdrawal liability assessment payments even if arbitration is started.

Enclosed as ***Exhibit B*** is a copy of the Plan's withdrawal liability procedures.

## IV. Controlled Group and Other Information

ERISA §4001(b)(1) (29 U.S.C. §1301(b)(1)) provides that for purposes of withdrawal liability all employees of trades and businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer. Please provide the Plan with the information and documents requested in the enclosed ***Exhibit C*** to assist the Plan with recovering the assessed withdrawal liability. Under ERISA §4219(a) (29 U.S.C. §1391(a)) you must supply this information within 30 days.

## V. Other Amounts Due

The amount of this withdrawal liability is separate and distinct from other amounts that may be owed by RCK, including contributions or any amounts found due as a result of payroll audits.

If you have any questions about this withdrawal liability assessment, please call me.

Sincerely,

Greg Trento,
Vice President – Client Services
-

Enclosure

R.C. Knapp, Inc.
February 27, 2020
Page 4


cc:     All Trustees
         Shaamini A. Babu, Esq.

Exhibit A

Pension Trust Fund for Operating Engineers
Withdrawal Liability Assessment for Terminations from January 1, 2014 - December 31, 2014

| | |
|---|---|
| 1) 12/31/2002 Unfunded Vested Benefits for Withdrawal Liability | $666,776,376 |
| 2) 12/31/2003 Unfunded Vested Benefits for Withdrawal Liability | $747,219,061 |
| 3) 12/31/2004 Unfunded Vested Benefits for Withdrawal Liability | $1,156,671,026 |
| 4) 12/31/2005 Unfunded Vested Benefits for Withdrawal Liability | $1,259,652,260 |
| 5) 12/31/2006 Unfunded Vested Benefits for Withdrawal Liability | $1,120,600,308 |
| 6) 12/31/2007 Unfunded Vested Benefits for Withdrawal Liability | $1,317,161,200 |
| 7) 12/31/2008 Unfunded Vested Benefits for Withdrawal Liability | $1,546,421,374 |
| 8) 12/31/2009 Unfunded Vested Benefits for Withdrawal Liability | $2,302,881,666 |
| 9) 12/31/2010 Unfunded Vested Benefits for Withdrawal Liability | $2,523,866,964 |
| 10) 12/31/2011 Unfunded Vested Benefits for Withdrawal Liability | $2,934,113,048 |
| 11) 12/31/2012 Unfunded Vested Benefits for Withdrawal Liability | $3,193,604,979 |
| 12) 12/31/2013 Unfunded Vested Benefits for Withdrawal Liability | $2,729,318,298 |
| 13) 12/31/2002 Pool Balance at 12/31/2013 | $300,049,369 |
| 14) 12/31/2003 Pool Balance at 12/31/2013 | $56,890,752 |
| 15) 12/31/2004 Pool Balance at 12/31/2013 | $246,663,922 |
| 16) 12/31/2005 Pool Balance at 12/31/2013 | $98,659,872 |
| 17) 12/31/2006 Pool Balance at 12/31/2013 | -$45,095,965 |
| 18) 12/31/2007 Pool Balance at 12/31/2013 | $184,092,221 |
| 19) 12/31/2008 Pool Balance at 12/31/2013 | $231,566,781 |
| 20) 12/31/2009 Pool Balance at 12/31/2013 | $681,211,615 |
| 21) 12/31/2010 Pool Balance at 12/31/2013 | $304,681,416 |
| 22) 12/31/2011 Pool Balance at 12/31/2013 | $512,717,934 |
| 23) 12/31/2012 Pool Balance at 12/31/2013 | $425,977,916 |
| 24) 12/31/2013 Pool Balance at 12/31/2013 | -$253,912,391 |
| 25) Employer Name | R.C. Knapp, Inc. |
| 26) Account Number(s) | 046846-24 |
| 27) Contributions from January 1, 1998 - December 31, 1998 | $0 |
| 28) Contributions from January 1, 1999 - December 31, 1999 | $0 |
| 29) Contributions from January 1, 2000 - December 31, 2000 | $0 |
| 30) Contributions from January 1, 2001 - December 31, 2001 | $0 |
| 31) Contributions from January 1, 2002 - December 31, 2002 | $0 |
| 32) Contributions from January 1, 2003 - December 31, 2003 | $0 |
| 33) Contributions from January 1, 2004 - December 31, 2004 | $0 |
| 34) Contributions from January 1, 2005 - December 31, 2005 | $0 |
| 35) Contributions from January 1, 2006 - December 31, 2006 | $0 |
| 36) Contributions from January 1, 2007 - December 31, 2007 | $0 |
| 37) Contributions from January 1, 2008 - December 31, 2008 | $0 |
| 38) Contributions from January 1, 2009 - December 31, 2009 | $64,583 |
| 39) Contributions from January 1, 2010 - December 31, 2010 | $46,461 |
| 40) Contributions from January 1, 2011 - December 31, 2011 | $64,458 |
| 41) Contributions from January 1, 2012 - December 31, 2012 | $71,795 |
| 42) Contributions from January 1, 2013 - December 31, 2013 | $56,332 |
| 43) Contributions from January 1, 1998 - December 31, 2002 - sum of items (27) - (31) | $0 |
| 44) Contributions from January 1, 1999 - December 31, 2003 - sum of items (28) - (32) | $0 |
| 45) Contributions from January 1, 2000 - December 31, 2004 - sum of items (29) - (33) | $0 |
| 46) Contributions from January 1, 2001 - December 31, 2005 - sum of items (30) - (34) | $0 |
| 47) Contributions from January 1, 2002 - December 31, 2006 - sum of items (31) - (35) | $0 |
| 48) Contributions from January 1, 2003 - December 31, 2007 - sum of items (32) - (36) | $0 |
| 49) Contributions from January 1, 2004 - December 31, 2008 - sum of items (33) - (37) | $0 |
| 50) Contributions from January 1, 2005 - December 31, 2009 - sum of items (34) - (38) | $64,583 |
| 51) Contributions from January 1, 2006 - December 31, 2010 - sum of items (35) - (39) | $111,044 |
| 52) Contributions from January 1, 2007 - December 31, 2011 - sum of items (36) - (40) | $175,502 |
| 53) Contributions from January 1, 2008 - December 31, 2012 - sum of items (37) - (41) | $247,297 |
| 54) Contributions from January 1, 2009 - December 31, 2013 - sum of items (38) - (42) | $303,629 |
| 55) Total plan contributions from January 1, 1998 - December 31, 2002 | $474,541,606 |
| 56) Total plan contributions from January 1, 1999 - December 31, 2003 | $494,319,710 |
| 57) Total plan contributions from January 1, 2000 - December 31, 2004 | $522,986,125 |
| 58) Total plan contributions from January 1, 2001 - December 31, 2005 | $548,000,786 |
| 59) Total plan contributions from January 1, 2002 - December 31, 2006 | $594,631,188 |
| 60) Total plan contributions from January 1, 2003 - December 31, 2007 | $658,726,038 |
| 61) Total plan contributions from January 1, 2004 - December 31, 2008 | $714,534,225 |

Exhibit A

Pension Trust Fund for Operating Engineers
Withdrawal Liability Assessment for Terminations from January 1, 2014 - December 31, 2014

| | | |
|---|---|---|
| 62) Total plan contributions from January 1, 2005 - December 31, 2009 | $747,070,712 | |
| 63) Total plan contributions from January 1, 2006 - December 31, 2010 | $761,592,021 | |
| 64) Total plan contributions from January 1, 2007 - December 31, 2011 | $784,825,417 | |
| 65) Total plan contributions from January 1, 2008 - December 31, 2012 | $803,298,729 | |
| 66) Total plan contributions from January 1, 2009 - December 31, 2013 | $844,529,442 | |
| 67) Employer fraction of 1998 - 2002 contributions - item (43) divided by item (55) | 0.000000% | |
| 68) Employer fraction of 1999 - 2003 contributions - item (44) divided by item (56) | 0.000000% | |
| 69) Employer fraction of 2000 - 2004 contributions - item (45) divided by item (57) | 0.000000% | |
| 70) Employer fraction of 2001 - 2005 contributions - item (46) divided by item (58) | 0.000000% | |
| 71) Employer fraction of 2002 - 2006 contributions - item (47) divided by item (59) | 0.000000% | |
| 72) Employer fraction of 2003 - 2007 contributions - item (48) divided by item (60) | 0.000000% | |
| 73) Employer fraction of 2004 - 2008 contributions - item (49) divided by item (61) | 0.000000% | |
| 74) Employer fraction of 2005 - 2009 contributions - item (50) divided by item (62) | 0.008645% | |
| 75) Employer fraction of 2006 - 2010 contributions - item (51) divided by item (63) | 0.014581% | |
| 76) Employer fraction of 2007 - 2011 contributions - item (52) divided by item (64) | 0.022362% | |
| 77) Employer fraction of 2008 - 2012 contributions - item (53) divided by item (65) | 0.030785% | |
| 78) Employer fraction of 2009 - 2013 contributions - item (54) divided by item (66) | 0.035952% | |
| 79) Allocated share of 12/31/2002 Pool - item (13) times item (67) | $0 | |
| 80) Allocated share of 12/31/2003 Pool - item (14) times item (68) | $0 | |
| 81) Allocated share of 12/31/2004 Pool - item (15) times item (69) | $0 | |
| 82) Allocated share of 12/31/2005 Pool - item (16) times item (70) | $0 | |
| 83) Allocated share of 12/31/2006 Pool - item (17) times item (71) | $0 | |
| 84) Allocated share of 12/31/2007 Pool - item (18) times item (72) | $0 | |
| 85) Allocated share of 12/31/2008 Pool - item (19) times item (73) | $0 | |
| 86) Allocated share of 12/31/2009 Pool - item (20) times item (74) | $58,891 | |
| 87) Allocated share of 12/31/2010 Pool - item (21) times item (75) | $44,426 | |
| 88) Allocated share of 12/31/2011 Pool - item (22) times item (76) | $114,654 | |
| 89) Allocated share of 12/31/2012 Pool - item (23) times item (77) | $131,137 | |
| 90) Allocated share of 12/31/2013 Pool - item (24) times item (78) | -$91,287 | |
| 91) Total allocated share - sum of items (79) - (90) | $257,821 | |
| 92) Preliminary de minimis amount (deductible) - smaller of $50,000 and item (91) | $50,000 | |
| 93) Reduction in de minimis amount - item (91) minus $100,000, but not less than $0 | $157,821 | |
| 94) Final de minimis amount - item (92) minus item (93), but not less than $0 | $0 | |
| Critical Status Adjustment | | |
| 95) Unamortized Applicable Benefits as of December 31, 2013 | $351,184,194 | |
| 96) Allocated share - item (78) times item (95) | $126,258 | |
| 97) Net Withdrawal Liability - item (91) minus item (94) plus item (96) | $384,079 | |
| 98) Ten plan years of contributory hours through year preceding date of withdrawal | | |
| January 1, 2004 - December 31, 2004 | 0.00 | |
| January 1, 2005 - December 31, 2005 | 0.00 | 3 yr avg |
| January 1, 2006 - December 31, 2006 | 0.00 | 0.00 |
| January 1, 2007 - December 31, 2007 | 0.00 | 0.00 |
| January 1, 2008 - December 31, 2008 | 0.00 | 0.00 |
| January 1, 2009 - December 31, 2009 | 9,334.00 | 3,111.33 |
| January 1, 2010 - December 31, 2010 | 6,295.50 | 5,209.83 |
| January 1, 2011 - December 31, 2011 | 8,087.50 | 7,905.67 |
| January 1, 2012 - December 31, 2012 | 8,350.30 | 7,577.77 |
| January 1, 2013 - December 31, 2013 | 6,107.50 | 7,515.10 |
| 99) Highest 3 year average annual hours | | 7,905.67 |
| 100) Highest contribution rate during the past ten years | | $9.52 |
| 101) Annual payment - item (99) times item (100) | | $75,261.98 |
| 102) Quarterly payment - item (101) divided by 4 | | $18,815.50 |
| 103) Number of full quarterly payments | | 24 |
| 104) Amount of last payment | | $6,660.04 |

*PENSION TRUST FUND FOR OPERATING ENGINEERS*

# WITHDRAWAL LIABILITY PROCEDURES

## GENERAL MATTERS

I. Building and Construction Industry Plan

The Board of Trustees has determined that the Plan primarily covers employees in the building and construction industry (ERISA §4203(b)(1)(B)(i)).

II. Statutory Definitions for Withdrawn Employers When Substantially All the Employees with Respect to Whom the Employers had an Obligation to Contribute Under the Plan Perform Work in the Building and Construction Industry

A. Complete Withdrawal (ERISA § 4203(b))

A complete withdrawal occurs if an employer ceases to have an obligation to contribute under the plan, and the employer either (1) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or (2) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

B. Partial Withdrawal (ERISA §§ 4205, 4208(d) (I))

In general there is a partial withdrawal from a plan if for a plan year there is either (1) a 70% contribution decline (as defined in detail in ERISA § 4205(b)(1) ), or (2) a partial cessation of the employer's contribution obligation (as defined in ERISA ' 4205(b)(2) ). However, employers in the building and construction industry are liable for partial withdrawals only if the employer's obligation to contribute under the plan is continued for no more than an insubstantial portion of its work in the craft and area jurisdiction of the collective bargaining agreement of the type for which contributions are required.

III Statutory Definition for Withdrawn Employers When Not Substantially All Their Employees Worked in the Building and Construction Industry

A. Complete Withdrawal (ERISA § 4203(a))

A complete withdrawal occurs when an employer (1) permanently ceases to have an obligation to contribute under the Plan, or (2) permanently ceases all covered operations under the plan.

B. Partial Withdrawal (ERISA §4205(a))
There is a partial withdrawal by an employer from a plan on the last day of a plan year if for such plan year (1) there is a 70% contribution decline, or (2) there is a partial cessation of the employer=s contribution obligation.

## ASSESSING WITHDRAWAL LIABILITY

IV. Plan's Assessment (ERISA § 4202)
When an employer withdraws from the Plan,

A. The Plan actuary shall calculate the amount of the employer's withdrawal liability based on information supplied to it by the Plan's manager and in accordance with Article XVI of the Plan;

B. The Plan manager shall notify the employer of the amount of the withdrawal liability; and

C. The Plan manager with the assistance of the Plan's attorneys, if necessary, shall collect the amount of the withdrawal liability from the employer.

V. Confirming Continued Work in Jurisdiction After Withdrawal
When the Plan acquires information by any means showing that an employer is either no longer contributing to the Plan or is contributing for no more than an insubstantial portion of its work previously reported, the Plan will:

A. Check the employer's status with the Contractors State Licensing Board, Secretary of State, and other appropriate government agencies having relevant information;

B. Attempt to determine whether or not the employer was working in the building and construction industry; and

C. If it is determined that substantially all the employees for whom the employer had an obligation to contribute to the Plan worked in the building and construction industry, communicate with the Union district representatives of the area(s) in which the employer worked and contact the employer, if the employer is responsive, to determine whether or not the employer is continuing to perform work in the jurisdiction of the respective collective bargaining agreement.

VI.   Calculation of Withdrawal Liability

If after ascertaining the facts and consulting with the Plan's actuary and attorney as necessary, the Plan manager determines that there has been a complete or partial withdrawal, the Plan manager shall compile the necessary information and send it to the Plan's actuary for calculation of withdrawal liability. The Plan's actuary shall calculate the total amount of an employer's withdrawal liability and the amortized payment schedule and send it to the Plan manager. ERISA § 4211(b)(2)(A).

VII.  Exit Audits

An employer may be subject to an exit audit upon its withdrawal from the Plan. All amounts found due on audit to the Plan will be incorporated into the calculation of the withdrawal liability of the employer in accordance with ERISA § 4211(b)(2)(A).

VIII.  Withdrawal Liability Payments (ERISA § 4219)

A.   Periodic Payments:   An employer's withdrawal liability shall be payable over a period of years, not to exceed 20 years, necessary to amortize the amount in level annual payments. ERISA § 4219(c)(1)(A)-(B).

B.   Annual Payment:  The amount of each annual payment shall be the product of (1) the average number of hours for the period of 3 consecutive plan years during the period of 10 consecutive plan years ending before the withdrawal in which the hours of the employer were the highest, multiplied by (2) the highest contribution rate at which the employer had an obligation to contribute during that same 10 consecutive year period. ERISA § 4219(c)(1)(C).

C.   Quarterly Installments:  Each annual payment shall be payable in 4 equal installments due quarterly. ERISA § 4219(c) (3).

D.   Payment Schedule:   Withdrawal liability shall be payable in accordance with the schedule set forth by the Plan beginning no later than 60 days after the date of demand notwithstanding any request for review or appeal of the determination or amount. ERISA § 4219(c) (2).

E.   Prepayments.  An employer shall be entitled to prepay the outstanding amount of the unpaid annual withdrawal liability payments, plus accrued interest, if any, in whole or in part without penalty. ERISA § 4219(c) (4).

IX.    Withdrawal Liability Assessment (ERISA § 4219(b))
As soon as practicable after an employer's withdrawal, the Plan manager will:

    A.    Notification of Amount:  Notify the employer in writing of (1) the amount of withdrawal liability, and (2) the schedule for liability payments; and

    B.    Payment Demand:  Demand payment in accordance with the schedule.

X.    Interest

    A.    Pre-Litigation (ERISA § 4219(c) (3), (5)-(6)): If a withdrawal liability payment(s) is not made when due, interest on the payment shall accrue from the due date until payment is received by the Plan.  If the withdrawal liability is accelerated, interest on the total accelerated amount shall accrue from the due date of the first withdrawal installment payment which was not timely made.

       The applicable interest rate for each calendar quarter shall be (1) the average quoted prime rate on short-term commercial loans for the 15th day (or next business day) of the month preceding the beginning of each calendar quarter as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15, plus (2) 3%.

    B.    Post-Litigation (ERISA § 502(g)(2)): Once legal action is filed,  the delinquent withdrawal liability installment payment(s) or total accelerated withdrawal liability shall be treated in the same manner as a delinquent contributions and will incur interest at the rate of 10% per year from the due date of the first withdrawal installment payment which was not timely made.

XI.    Liquidated Damages

    A.    Pre-Litigation: If a withdrawal liability installment payment(s) is not received by the due date as specified in the payment schedule in the assessment, the employer shall be liable for liquidated damages of 10% of the unpaid withdrawal liability installment payment(s). If the total withdrawal liability is accelerated by the Plan due to an employer's default, the employer shall be liable for liquidated damages of 10% of the total accelerated amount.

    B.    Post-Litigation (ERISA § 502(g)(2)): Once legal action is filed, it shall be treated in the same manner as a delinquent contribution so that liquidated damages on the unpaid withdrawal liability installment payment(s) or total accelerated withdrawal liability shall be increased to the greater of:

    (1) 20% of the total unpaid withdrawal liability as of the date the action is filed and thereafter, or

(2) Interest on the total unpaid withdrawal liability as of the due date of the first withdrawal installment payment which was not timely made.

XII. Defaults (ERISA § 4219(c) (5))

In the event of a default, the Plan may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. Subject to PBGC § 4219.31, the term "default" shall mean:

A. The failure of an employer to make, when due, any withdrawal liability payment, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and

B. Any event which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability, including but not limited to, the employer is going out of business, filing of bankruptcy by the employer, a sale of the assets of the employer, or any indication that the employer (or its principal) will move outside the jurisdiction of the respective collective bargaining agreement.

XIII. Control Group (ERISA § 4219(a))

Within 30 days after receiving a written request from the Plan, an employer shall furnish all information relating to all trades and businesses within the same control group as the employer as defined in ERISA § 4001(b)(1). The Plan may enforce this obligation by filing an action in federal court in the Northern District of California, and shall be entitled to recover all reasonable attorneys' fees and costs incurred in such an action.

**COLLECTING WITHDRAWAL LIABILITY**

XIV. Request for Review (ERISA § 4219(b)(2) )

A. No later than 90 days after the employer receives a notice of withdrawal liability assessment, the employer may in writing:

(1) Ask the Plan to review any specific matters relating to the determination of the employer's liability and schedule of payments;

(2) Identify any inaccuracy in the determination of the amount of the unfunded

vested benefits allocated to the employer; and

(3) Furnish any additional relevant information to the Plan.

B. After a reasonable review of any matter raised, the Plan shall notify the employer of:

(1) The Plan's decision;

(2) The basis of the decision; and

(3) The reason for any change in the determination of the employer's liability or schedule of liability payments.

C. Requests for review made more than 90 days after receipt of the withdrawal liability assessment by the employer will not be considered by the Plan.

XV. Arbitration (ERISA § 4221)

A. Exclusive Remedy: Any dispute between an employer and the Plan concerning a determination of withdrawal liability made under ERISA §§ 4201 through 4219 must be resolved through arbitration.

B. Initiation of Arbitration: Either party may initiate arbitration (not merely request arbitration) within 60 days after the earlier of:

(1) The Plan's response to the request for review by the employer; or

(2) 120 days after the date of the employer's request for review.

C. Rules of Arbitration. Arbitration proceedings shall be initiated and conducted in accordance with the American Arbitration Association Multi-Employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes.

D. Joint Initiation. The parties may jointly initiate arbitration within 180 days after the date of withdrawal liability assessment.

E. Venue. Arbitration proceedings shall be conducted within the jurisdiction of the Federal District Court for the Northern District of California.

F. Presumption of Correctness. Any determinations made by the Plan with respect to the calculation and assessment of withdrawal liability are presumed to be correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous. ERISA § 4221(a)(3).

G. Payments Required During Arbitration. During arbitration, withdrawal liability installment payments shall be paid by an employer in accordance with the schedule of payments specified in the assessment until an arbitrator issues a final decision. ERISA § 4221(d).

H. Due According to Schedule: If arbitration is not timely initiated, the amounts demanded by the Plan shall be due and owing on the schedule set forth in the assessment by the Plan. The plan sponsor may bring an action in a state or federal court of competent jurisdiction for collection. ERISA § 4221 (b) (1).

I. Late Attempts to Initiate Arbitration: Failure by the employer to initiate arbitration in a timely manner will constitute a waiver of the right to contest the withdrawal liability and a waiver of all available affirmative defenses.

XVI. Collection Actions

A. Due According to Schedule. If arbitration has not been initiated pursuant to XV, the amounts demanded by the Plan shall be due and owing on the schedule set forth in the assessment by the Plan. ERISA § 4221 (b )(1). The employer shall be liable for the entire withdrawal liability if accelerated by the Plan under ERISA § 4219(c)(5).

B. Court Jurisdiction. The Plan may bring a legal action for collection in either state or federal court. ERISA § 4221(b)(1).

C. Statute of Limitations. In general, the statute of limitations for collection actions on withdrawal liability is 6 years after the date on which each unpaid payment was due. ERISA § 4301(f).

D. Recovery Amounts. In any action to recover withdrawal liability the Plan shall have all the rights it has with respect to delinquent contributions under ERISA §§ 515 and 502(g), including the right to recover:

(1) the unpaid assessed withdrawal liability,

(2) interest on the unpaid assessed withdrawal liability,

(3) an amount equal to the greater of (a) additional interest on the unpaid assessed withdrawal liability, or (b) liquidated damages of 20% of the assessed withdrawal liability,

(4) reasonable attorneys' fees and costs incurred by the Plan, and

(5) such other legal or equitable relief as the court deems appropriate.

**MISCELLANEOUS**

XVII. Abatement (PBGC Reg. § 4207.1-4207.10)

To have withdrawal liability abated, an employer must apply to the Plan by the first scheduled withdrawal liability payment falling after the employer resumes covered operations, or if later, the 15th calendar day after the employer resumes covered operations. Upon receipt of proper application, the Plan will proceed as required by PBGC Reg. § 4207.3.

An employer that completely withdraws and subsequently reenters the Plan shall have its liability for that withdrawal abated if the employer resumes covered operations under the Plan, and the number of covered hours during the measurement period designated in the regulations after the employer resumes covered operations exceeds 30% of the average number of covered hours for the 2 plan years in which its covered hours were the highest within the 5 plan years immediately preceding the year of complete withdrawal. PBGC Reg. § 4207.5.

Partial withdrawal liability that has been assessed may be abated in accordance with PBGC Reg. § 4207.8.

XVIII. Free-Look Rules Effective July 1, 2007

The Free Look Rules under ERISA § 4210 shall apply to an Employer which first has an obligation to contribute to the Plan on or after July 1, 2007, subject to the rules set forth in Plan Section 16.06.

XIX. Rehabilitation Plan (ERISA § 305(e)(9) and 304(f)(3))

A. If the Plan is in critical status, any benefit reductions under ERISA § 305(e)-(f) shall be disregarded in determining the Plan's unfunded vested benefits for purposes of determining an employer's withdrawal liability.

B. If the Plan is in critical status, any surcharges under ERISA § 305(e)(7) shall be disregarded in determining the allocation of unfunded vested benefits to an employer under ERISA § 4211, except for purposes of determining the unfunded vested benefits attributable to an employer under ERISA § 4211(c)(4) or a comparable method approved under ERISA § 4211(c)(5).

XX. Estimate of Withdrawal Liability

If an employer requests in writing that the Plan make an estimate of the employer's potential withdrawal liability, the Plan manager shall furnish the employer with an estimated withdrawal liability in accordance with ERISA § 101(l). The employer may be required to pay the reasonable cost of making such estimate.

Adopted this 24th day of May 2010

Russell E. Burns, Co-Chairman

F.G. Crosthwaite, Co-Chairman

# EXHIBIT C

***Pension Plan for Pension Trust Fund for Operating Engineers***
**Request for Information Under ERISA §4219(a)**

Please furnish information and documents requested below **within 30 days** of the date of notice of withdrawal liability assessment pursuant to ERISA § 4219(a). The term "Assessed Employer(s)" means the employer (or employers) that has been assessed withdrawal liability as specified in the notice of assessment to which this Exhibit C is attached. If a request is inapplicable, please specify the reason (i.e. shareholder documentation inapplicable because Assessed Employer is a partnership).

1. Provide documentation identifying each shareholder of the Assessed Employer(s) and the respective interests held by each shareholder in the corporation, including but not limited to stock certificates, stock registries and Form 1120 - Schedule K-1 from corporate tax returns filed for the past three (3) years.

2. Provide documentation identifying each member of the Assessed Employer(s) and the respective interest held by each member in the limited liability company (LLC), including but not limited to operating agreements and Form 1065 – Schedule K-1 from LLC tax returns filed for the past three (3) years.

3. Provide documentation identifying each partner of the Assessed Employer(s) and the respective interest held by each of them in the partnership, including but not limited to partnership agreements and Form 1065 – Schedule K-1 from partnership tax returns filed for the past three (3) years.

4. Identify all fictitious business names used by the Assessed Employer(s) at any time in the past three (3) years.

5. Provide the addresses for all locations where the Assessed Employer(s) conducted business at any time in the past three (3) years, and all lease agreements for such locations.

6. Identify any other trades and/or businesses in which any owner identified in response to requests 1, 2 and 3, above, held an interest and the respective interest held by each of them in the trades and/or businesses at any time in the past three (3) years. Please note that a trade or business includes corporations, LLCs, partnerships, sole proprietorships, joint ventures, trusts, and real estate holdings (other than an owner's primary residence). If any trusts are identified in response to this request, please name the trustee, grantor and beneficiaries of each trust.

7. Please describe each sale, transfer, assignment, or change in ownership involving the Assessed Employer or any trades and/or businesses identified in response to No. 6, above.

8. Provide all lease agreements for any real estate holdings and/or trust agreements for any trusts identified in response to request No. 6, above.

9.      Provide all contracts or agreements, including loan agreements, between the Assessed Employer(s) and any of its shareholder (and/or his/her spouse, child, parent, grandparents) identified in response to requests No. 1, 2 and 3, above, in effect at any time in the past three (3) years, including all addendums and amendments thereto.

10.     Provide federal and state income tax returns for the Assessed Employer(s) for the past three (3) years, including all supporting schedules, statements, forms, attachments, supplements, and/or amendments.

11.     Provide the financial statements, audited and unaudited, for the Assessed Employer(s) for the past three (3) years.

12.     Indicate whether the Assessed Employer(s) has sold or transferred any assets valued in excess of $20,000 at any time in the past three (3) years, or intends to sell or transfer any assets at any time within the next twelve (12) months.  If so, please provide an itemized list of all such assets and a copy of the purchase agreement.

13.     Indicate whether the Assessed Employer(s) has filed for bankruptcy, made an assignment for the benefit of creditors, merged, or otherwise liquidated or dissolved in the past three (3) years.

14.     Indicate whether the Assessed Employer(s) intends to file for bankruptcy, make an assignment for the benefit of creditors, merge, or otherwise liquidate or dissolve within the next twelve (12) months.

15.     Identify all persons or entities that provided professional services, including but not limited to accountancy, tax and legal services, to the Assessed Employer(s) for the past three (3) years.

**Note**: In the event sufficient information and documentation requested above is not timely provided, the Plan may assert claims against the Assessed Employer(s) for violating ERISA § 4219(a) and seek a Court order to compel compliance and an award of attorneys' fees and costs incurred as a result pursuant to ERISA §§ 502(g) and 4301(e).

# Exhibit 2

Russell L. Richeda
Michele R. Stafford
Shaamini A. Babu
Brandie M. Barrows
Ana P. Hallmon
Anne M. Bevington
Allan D. Shuldiner
Sun M. Chang
Matthew P. Minser
Tino X. Do
Jonathan J. Sha
Luz E. Mendoza
Craig L. Schechter
Eric K. Iwasaki

1141 Harbor Bay Parkway, Suite 100
Alameda, CA 94502
(510) 906-4710
www.sjlawcorp.com

Warren H. Saltzman
(1925-1988)

Richard C. Johnson
(1942-2014)

**Paralegals**

Elise Cotterill
Nargis Shaghasi
Wint Huskey
Alicia Wood
Anna Delgado

April 20, 2020

Richard Christopher Knapp
R.C. Knapp, Inc.
340 Part Blvd.
Richmond, CA 94801

Richard Christopher Knapp
R.C. Knapp, Inc.
P.O. Box 20730
El Sobrante, CA 94820

Richard Christopher Knapp
R.C. Knapp, Inc.
4070 Val Verde Rd.
Loomis, CA 95650-9401

**Re:** ***Pension Plan for the Pension Trust Fund for Operating Engineers***
**Re: R.C. Knapp, Inc. 60-Day Notice to Cure Delinquent Withdrawal Liability Payment**

Dear Mr. Knapp:

This office represents the Pension Plan for Pension Trust Fund for Operating Engineers (“Plan”). On February 27, 2020 the Plan assessed withdrawal liability in the amount of $384,079.00 against R.C. Knapp, Inc. (“RCK”), and each member of its controlled group, as a result of RCK’s withdrawal from the Plan on or about June 2014. The Plan’s February 27, 2020 letter, enclosed, is referred to herein as the Notice of Assessment.

**Acceleration**

Pursuant to ERISA §4219(c)(5)(b), PBGC § 4219.31(b)(2) and Section XII of the Plan’s Withdrawal Liability Assessment Procedures (attached as Exhibit B to the Notice of Assessment), the Plan can accelerate the entire unpaid withdrawal liability in the event of a default. A default can occur upon any event which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability, including but not limited to, the employer going out of business. According to the Secretary of State, RCK’s corporate status is suspended, and according to the Contractors State License Board, RCK’s license has expired, both of which indicate that RCK is currently out of business. Further, the quarterly installment payment of $18,815.50 due on April 1, 2020 has not been received.

Accordingly, the Plan hereby accelerates the entire unpaid withdrawal liability of $384,079.00. The sum of $384,079.00 is immediately due and payable. Please make the check payable to the “Pension Plan for Pension Trust Fund for Operating Engineers” and deliver it to my office.

If payment is not received immediately, we will proceed to file suit against RCK and all members of its controlled group. Further, RCK and all of its controlled group members will be held liable for the accelerated withdrawal liability and 10% interest plus the greater of 20% liquidated damages ($76,815.80) or 10% interest on the entire unpaid withdrawal liability as well as all attorneys’ fees and costs incurred by the Pension Plan pursuant to ERISA §502(g)(2).

**Controlled Group and Other Information**

Under ERISA §4001(b)(1), 29 U.S.C. §1301(b), all trades or businesses (whether or not incorporated) which are under common control shall be treated as a single employer in accordance with IRC §414(c) and each

member of the control group are jointly and severally liable for their own and each other member's withdrawal liability. IRC §414(c)-2(c)(1) provides that trades or businesses are under common control if the same five or fewer people own a controlling interest (i.e. 80% or more) in each organization and are in effective control (i.e., more than 50%) of each organization.

Please provide the Plan with the information requested in Exhibit C to the Notice of Assessment to assist the Plan in recovery of the assessed withdrawal liability. Under ERISA §4219(a), 29 U.S.C. §1399(a), you must supply this information within 30 days.

Should you have any questions, please feel free to contact me.

Sincerely,

Craig L. Schechter

CLS(tbm)/na
Encl.