UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RC KNAPP, INC., a suspended California corporation, and DOES 1-10<br><br>Defendants. | Case No. 20-cv-04475-LB<br><br>**ORDER REASSIGNING CASE; REPORT AND RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT**<br><br>Re: ECF No. 18 |

**INTRODUCTION**

The plaintiffs — a pension plan and its trustees (collectively, the Plan) — sued RC Knapp, Inc., alleging (1) withdrawal liability, in violation of the parties' collective bargaining agreement, the trust agreement, and the Employee Retirement Income Security Act of 1974 (ERISA), and (2) RC's failure to provide information to enable the Plan to comply with ERISA's requirements.[1] After RC did not appear in the case, the Plan moved for default judgment against it.[2] Because RC has not appeared (and thus did not consent to the court's jurisdiction), the court directs the Clerk of Court to reassign the case to a district judge and recommends that the newly assigned judge grant the Plan's motion for default judgment and enter judgment in the amount of (1) $384,079.00 in assessed

---

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 18.

ORDER; REPORT AND RECOMMENDATION – No. 20-cv-04475-LB

withdrawal liability, (2) $76,815.80 in liquidated damages, (3) $28,938.25 in interest (at 10-percent simple interest) from April 1, 2020 through December 31, 2020, and daily interest thereafter of $105.23, (4) $10,772.00 in attorney's fees, and (5) $609.95 in costs.[3] The court also recommends the entry of an order compelling RC to provide the Plan with records that are necessary to determine withdrawal liability.

## STATEMENT

This action arises under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1001–1461 (1982).

### 1. The Parties

The Plan is an "employee benefit plan" as defined in ERISA § 3(3) (29 U.S.C. § 1002(3)), an "employee benefit pension plan" as defined in ERISA § 3(2) (29 U.S.C. § 1002(2)), and a "multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3) (29 U.S.C. §§ 1002(37) & 1301(a)(3)). The Plan is jointly administered and maintained under the Labor Management Relations Act § 302(c) (29 U.S.C. § 186(c)).[4]

Plaintiffs James E. Murray and Dan Reding are members of the Plan's Board of Trustees (the "plan sponsor" within the meaning of ERISA §§ 3(16)(B)(iii) and 4001(a)(10)(A) (29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10)(A))). This makes them fiduciaries of the plan under ERISA §§ 3(21)(A) and 402(a) (29 U.S.C. §§ 1002(21)(a) and 1102(a)). As trustees, they are authorized to bring this action on behalf of the plan under ERISA §§ 4301(a)(1) & (b) and § 502(a)(3) (29 U.S.C. §§ 1451(a)(1) & (b) and 1132(a)(3)).[5]

Defendant RC is a suspended California corporation with its principal place of business at 340 Parr Boulevard in Richmond, California.[6] It was an employer within the meaning of ERISA § 3(5)

---

[3] *Id.* at 2; Proposed Judgment – ECF No. 21 at 2.

[4] Compl. – ECF No. 1 at 3 (¶ 1).

[5] *Id.* (¶ 2).

[6] The Plan served RC at this address, which is the correct address. Proof of Serv. – ECF No. 10; Schechter Decl. – ECF No. 27 at 2 (¶¶ 2–3, 5). The complaint, the motion, and the California Secretary

(29 U.SC. § 1002(5)) and the National Labor Relations Act (NLRA) § 2(2) (29 U.S.C. § 152(2)) and was engaged in industry affecting commerce within the meaning of ERISA § 3(11) and (12) (29 U.S.C. § 1002(11) and (12).[7] It was a participating employer in the Plan under a collective bargaining agreement with the Operating Engineers Local Union No. 3, a labor organization as defined in the NLRA § 2(5) (29 U.S.C. § 152(5)) that represents employees in an industry affecting interstate commerce.[8] As a participating employer, RC "was obligated to and did make contributions to the Plan on behalf of its employees that were covered under" the bargaining agreement.[9]

**2. Withdrawal Liability**

The Bargaining Agreement with the Union required RC to make contributions to the Plan for work performed by covered employees.[10] In or about June 2014, RC made a complete withdrawal from participation in the Plan under ERISA § 4203, 29 U.S.C. § 1383."[11]

On Feb 27, 2020, the Plan's third-party administrator notified RC of the assessed withdrawal liability, payable in one lump-sum payment of $384,079.00, or in 24 quarterly installments of $18,815.50, starting April 1, 2020 with a final payment of $6,660.04 on April 1, 2026.[12] The administrator also informed RC that under ERISA § 4219(b)(2) (29 U.S.C. § 1399(b)(2)), it had 90 days to request review of the withdrawal liability and that it must initiate arbitration within the 60-day period after the earlier of 120 days from the date of a request for review or the date the

---

of State's website misidentify the address as 360 and 340 Park Boulevard. Schechter Decl. – ECF No. 27 at 2 (¶¶ 2, 6).

[7] Compl. – ECF No.1 at 3 (¶ 3).

[8] *Id.* at 5 (¶ 9); Bargaining Agreement, Ex. A to Trento Decl. – ECF No. 19-2 at 1–6.

[9] Compl. – ECF No. 1 at 5 (¶ 9).

[10] *Id.* at 5 (¶ 9); Trento Decl. – ECF No. 19 at 2 (¶ 5); Bargaining Agreement, Ex. A to Trento Decl. – ECF No. 19-2 at 1–6.

[11] Compl. – ECF No. 1 at 5 (¶ 10); 4/20/2020 Letter, Ex. B to Shuldiner Decl. – ECF No. 20-1 at 7.

[12] Compl. – ECF No. 1 at 5–6 (¶ 13); Trento Decl. – ECF No. 19 at 3 (¶ 8); 2/27/2020 Letter, Ex. D to Trento Decl. – ECF No. 19-2 at 98–102.

Board notified it of the Board's decision in response to any request for review.[13] The letter also asked RC to furnish information and documents about its controlled group members, so that the administrator could identify all sources of recovery of the withdrawal liability.[14] RC did not make "any of the required quarterly installment payments, or provide sufficient information regarding controlled group members."[15]

On April 20, 2020, the Plan notified RC that it was in default because its corporate status was suspended by the California Secretary of State, its contractors license with the California Contractors State License Board had expired, and it had failed to make the quarterly withdrawal liability installment payment.[16] Taken together, these events indicated that RC was out of business and there was a substantial likelihood that RC would be unable to pay its withdrawal liability.[17] Under its Withdrawal Liability Assessment Procedures, the Plan notified RC that it was accelerating the entire unpaid withdrawal liability and that the entire amount (including interest and liquidated damages) was immediately due.[18] RC remains in default.

### 3. Procedural History

The Plan filed the complaint on July 7, 2020.[19] On August 4, 2020, it served RC with the complaint and all court filings by substitute service on an adult person apparently in charge at RC's business address, 340 Parr Boulevard, Richmond, California.[20] On the same day, the Plan

---

[13] 2/27/2020 Letter, Ex. D to Trento Decl. – ECF No. 19-2 at 101–02.

[14] Compl. – ECF No. 1 at 5–6 (¶ 13); 2/27/2020 Letter, Ex. D to Trento Decl. – ECF No. 19-2 at 102.

[15] Compl. – ECF No. 1 at 6 (¶ 15).

[16] Compl. – ECF No. 1 (¶ 16); Shuldiner Decl. – ECF No. 20 at 2 (¶ 3); 4/20/2020 Letter, Ex. B to Shuldiner Decl. – ECF No. 20-1 at 7–8.

[17] 4/20/2020 Letter, Ex. B to Shuldiner Decl. – ECF No. 20-1 at 7.

[18] Compl. – ECF No. 1 at 6 (¶ 16); Shuldiner Decl. – ECF No. 20 at 2 (¶ 3); 4/20/2020 Letter, Ex. B to Shuldiner Decl. – ECF No. 20-1 at 7.

[19] Compl. – ECF No. 1.

[20] Proof of Serv. – ECF No. 10 at 2–3; Schechter Decl. – ECF No. 27 at 2 (¶ 5).

sent the same documents by mail to Chris Knapp, RC's agent for service of process, at the 340 Parr Boulevard address.[21]

RC did not appear in the case. The Plan asked for, and the Clerk of Court entered, RC's default.[22] The Plan served RC with the entry of default.[23] The Plan moved for default judgment on all claims (serving RC with the motion and notice of the hearing date) and asked for (1) $384,079.00 in assessed withdrawal liability, (2) $76,815.80 in liquidated damages, (3) $28,938.25 in interest (calculated based on 10-percent simple interest) from April 1, 2020 through December 31, 2020, and daily interest thereafter of $105.23, (4) $10,772.00 in attorney's fees, and (5) $609.95 in costs. The Plan also asked for an order compelling RC to provide the Plan with records that are necessary to determine withdrawal liability.[24]

The court held a hearing on April 8, 2021. RC did not appear.

## JURISDICTION AND SERVICE

Before entering default judgment, a court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the defendant. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A court must also ensure the adequacy of service on the defendant. *Timbuktu Educ. v. Alkaraween Islamic Bookstore,* No. C 06–03025 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007).

First, the court has subject-matter jurisdiction over the withdrawal-liability ERISA claims. ERISA §§ 4201–4203 (29 U.S.C. § 1381–83); *see* 28 U.S.C. § 1331(a).

Second, the court has personal jurisdiction over RC. 29 U.S.C. § 1132(e). RC has its principal places of business in the Northern District of California, and the breach took place here.[25]

---

[21] Proof of Serv. – ECF No. 10 at 2–3 at 4.
[22] Entry of Default – ECF No. 14.
[23] Proof of Serv. – ECF No. 13 (wrong address); Proof of Serv. – ECF No. 33 (correct address).
[24] Mot. – ECF No. 18; Proposed Judgment – ECF No. 21; Proof of Serv. – ECF No. 31.
[25] Compl. – ECF No. 1 at 3 (¶ 3).

Third, the Plan properly served RC by substitute service, serving a copy of the summons and initiating documents to an adult person apparently in charge at the business address of RC and mailing a copy of the same documents to Mr. Knapp, RC's agent for service of process for RC.[26] Cal. Civ. Proc. Code § 415.20 (delivery to someone else at the party's usual residence or place of business with mailing after (known as "substitute service")).

## ANALYSIS

Under Federal Rule of Civil Procedure 55(b)(1), a plaintiff may apply to the district court for — and the court may grant — a default judgment against a defendant who has failed to plead or otherwise defend an action. After entry of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken as true, except as to damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987). The court need not make detailed findings of fact. *Combs,* 285 F.3d at 906. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *Pepsico, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). The decision to grant or deny a default judgment lies within the court's discretion. *Draper v. Coombs,* 792 F.2d 915, 924–25 (9th Cir. 1986).

In deciding whether to enter a default judgment, the court considers "(1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect[,] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second

---

[26] Proof of Serv. – ECF No. 10; Schechter Decl. – ECF No. 27 at 2 (¶ 5).

ORDER; REPORT AND RECOMMENDATION – No. 20-cv-04475-LB                6

and third factors to be the most important." *Mohanna v. Bank of Am., N.A.,* No. 16-cv-01033-HSG, 2017 WL 976015, at *3 (N.D. Cal. Mar. 14, 2017) (cleaned up and quotation omitted).

The *Eitel* factors favor entry of default judgment against RC.

### 1. The Possibility of Prejudice to the Plaintiff (First *Eitel* Factor)

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff weighs in favor of granting default judgment. *Eitel,* 782 F.2d at 1471; *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp. 2d 1039, 1054–55 (N.D. Cal. 2010). Without a default judgment, the Plan has no recourse to recover the assessed withdrawal liability. This factor weighs in favor of granting default judgment.

### 2. The Merits and Sufficiency of the Claims (Second and Third *Eitel* Factors)

The second and third *Eitel* factors consider the merits of the claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. "The Ninth Circuit has suggested that [these factors] require that plaintiffs' allegations state a claim on which the [plaintiffs] may recover." *Kloepping v. Fireman's Fund,* No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)) (cleaned up).

The Plan's allegations — taken as true — support the claims against RC for withdrawal liability and failure to provide information to determine withdrawal liability.

#### 2.1   Failure to Pay Withdrawal Liability

Pension plans are federally regulated under ERISA. The MPPAA, 29 U.S.C. §§ 1381–1453, amended ERISA "to allow plans to impose proportional liability on withdrawing employers for the unfunded vested benefit obligations of multiemployer plans."[27] *Carpenters Pension Tr. Fund v. Underground Constr. Co., Inc.*, 31 F.3d 776, 778 (9th Cir. 1994). "Prior to the enactment of the MPPAA, employers could withdraw from pension plans without paying their share of the plans' unfunded vested benefit liability." *Woodward Sand Co., Inc. v. W. Conf. Teamsters Pension Tr.*

---

[27] *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 720–25 (1984) (summarizing legislative history).

*Fund*, 789 F.2d 691, 694 (9th Cir. 1986) (citing *Bd. of Trs. of the W. Conf. of Teamsters Pension Tr. Fund v. Thompson Bldg. Materials, Inc.*, 749 F.2d 1396, 1401–02 (9th Cir. 1984)). "The employers could simply cease making pension contributions (e.g., by ceasing covered business) and avoid any responsibility for the actual, but unfunded, liabilities of the plans." *Id.* "The other employers remaining in the plan were forced either to assume these additional liabilities or to withdraw, resulting in unfairness to the remaining employers or insolvency of the plan." *Id.* (citing *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722, n.2 (1984)).

"To alleviate these problems, Congress established a system for computing and assessing the liability of employers who withdraw from pension plans." *Id.* (citing 29 U.S.C. § 1361). "This system is designed to make employers pay their share of the real cost of pensions, by paying a share of the difference between the assets already contributed and the vested benefit liability." *Id.* (citing *R.A. Gray*, 467 U.S. at 723). "When an employer withdraws from a multiemployer pension plan, such as the one administered by the Fund, ERISA requires a withdrawing employer to compensate a pension plan for benefits that have already vested with the employees at the time of the employer's withdrawal." *Id.* (citing *R.A. Gray*, 467 U.S. at 725). "This 'withdrawal liability' is assessed against the employer to 'ensure that employees and their beneficiaries [are not] deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.'" *Id.* (citing *R.A. Gray*, 467 U.S. at 720). Given the remedial purposes of ERISA and the MPPAA, their provisions should be liberally construed to protect plan participants. *Teamsters Pension Tr. Fund—Bd. of Trs. of W. Conf. v. Allyn Transp. Co.*, 832 F.2d 502, 507 (9th Cir. 1987) (citation omitted).

29 U.S.C. § 1399 sets forth the procedure for the calculation and notification of a withdrawing employer's withdrawal liability. As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor must notify the employer of the amount owed and provide a schedule of payments. 29 U.S.C. § 1399(b)(1). The employer is entitled, within ninety days of such notice, to ask the sponsor to review any specific matter relating to the determination of the employer's withdrawal liability and schedule of payments, to identify any inaccuracies, or to provide

additional relevant information. 29 U.S.C. § 1399(b)(2)(A). After a reasonable review of matters raised, the plan sponsor must notify the employer of its decision. 29 U.S.C. § 1399(b)(2)(B).

29 U.S.C. § 1401 provides the procedure for any dispute. Section 1401(a)(1)(A) states:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 U.S.C. § 1381–99] shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period after the earlier of (A) the date of notification to the employer under section 4219(b)(2)(B) [29 U.S.C. § 1399(b)(2)(B)], or (B) 120 days after the date of the employer's request under section 4219(b)(2)(A) [29 U.S.C. § 1399(b)(2)(A)].

Section 1401(b)(1) states:

> If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 4219(b)(1) [29 U.S.C. § 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

An employer that fails to initiate arbitration in a timely manner waives defenses and objections that must have been raised in arbitration. *Allyn*, 832 F.2d 502, at 506–07.

The Plan has made a prima facie showing that it is entitled to withdrawal liability. In addition to the non-damages allegations in the complaint (taken as true), it provided evidence showing that RC made a complete withdrawal in June 2014.[28] The Plan also established that it complied with the MPPAA's procedures for addressing withdrawal liability: (1) it notified RC of the withdrawal liability, payable in a lump sum or in quarterly installments; and (2) it advised RC that it could challenge the withdrawal-liability calculation by requesting review within ninety days of receiving the assessment and thereafter by timely demanding arbitration.[29] RC did not request review or initiate arbitration, and it did not make any quarterly withdrawal-liability installment payments. The Plan told RC that based on its complete withdrawal and signs that the company was out of business, the Plan was accelerating the withdrawal liability and that if it did not receive payment, it would file a lawsuit.[30] Thus, under ERISA § 4221(b)(1) (29 U.S.C. § 1401(b)(1)), because the

---

[28] Compl. – ECF No. 1 at 5 (¶ 10); 2/27/2020 Letter, Ex. D Trento Decl. – ECF No. 19-2 at 98.

[29] Trento Decl. – ECF No. 19 at 3 (¶ 8); 2/27/2020 Letter, Ex. D to *id*. – ECF No. 19-2 at 98–101.

[30] Shuldiner Decl. – ECF No. 20 at 2 (¶ 3); 4/20/2020 Letter, Ex. B to *id*. – ECF No. 20-1 at 7.

Plan complied with the procedures for assessing withdrawal liability set forth in 29 U.S.C. § 1399, the Plan's assessed withdrawal liability is binding on RC.

### 2.2   Failure to Provide Information

In the complaint, the Plan alleged that RC failed to provide the Plan with the information requested regarding withdrawal liability, including "all necessary information relating to any member within RC's controlled group under ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)[,] and any transactions to evade or avoid his withdrawal liability under ERISA § 4212, 29 U.S.C. § 1392," and asked for injunctive relief.[31] The Plan has established its entitlement to this information.

ERISA mandates that an employer provide this information. When an employer withdraws, it "shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable to plan sponsor to comply with the requirements of this part." 29 U.S.C. § 1399(a). Courts in this district and others routinely order defaulting defendants to provide information to plans as part of the default-judgment order. *See, e.g., N. Cal. Glaziers Pension Tr. Fund v. Hollis Glass, Inc.*, No. C 11–0966 CW (MEJ), 2011 WL 5974618, at *10 (N.D. Cal. Oct. 17, 2011), *report and recommendation adopted in part*, 2012 WL 259330 (N.D. Cal. Jan. 27, 2012); *Auto. Indus. Pension Tr. Fund v. Bi–City Paint & Body Co., Inc.*, No. C 12–01972 LB, 2012 WL 6799735, at *9–10 (N.D. Cal. Dec. 6, 2012), *report and recommendation adopted*, 2013 WL 69156 (N.D. Cal. Jan. 3, 2013).

The Plan asked for the information, and RC did not provide it, despite ERISA's mandate. The undersigned recommends that the default-judgment order direct RC to provide the information.

### 3.   The Sum of Money at Stake (Fourth *Eitel* Factor)

The fourth *Eitel* factor considers the amount of money at stake in the litigation. *Eitel*, 782 F.2d at 1471. When the money is substantial or unreasonable, default judgment is discouraged. *Id.* at 1472 (three-million-dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. S. Elec. Inc.*, No. C 09-32 JF (RS),

---

[31] Compl. – ECF No. 1 at 8 (¶¶ 24–29), 8–9 (Prayer for Relief).

2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Bd. of Trs. v. RBS Wash. Blvd., LLC*, No. C 09-00660 WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8, 2010). When the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2–3 (N.D. Cal. June 20, 2011) (the amount of unpaid contributions, liquidated damages, and attorney's fees were appropriate because they were supported by adequate evidence provided by the plaintiffs).

The Plan seeks the following damages: (1) $384,079.00 in assessed withdrawal liability; (2) $76,815.80 in liquidated damages; (3) $28,938.25 in interest (at 10-percent simple interest) from April 1, 2020 through December 31, 2020, and daily interest thereafter of $105.23; (4) $10,772.00 in attorney's fees; and (5) $609.95 in costs.[32]

In a similar case in this district, a pension plan sought $2,399,038 in unpaid withdrawal liability, $311,644.08 in interest, $479,807.60 in liquidated damages, $30,784.00 in attorney's fees, and $1,304.83 in costs. *Bd. of Trs. of the Pac. Coast Roofers Pension Plan v. Fryer Roofing Co., Inc.*, No. 16-cv-02798-LHK, 2017 WL 6539868, at *5 (N.D. Cal. Dec. 21, 2017). The court found that while the sums were substantial, they were "tailored to Defendant's 'specific misconduct' of complete withdrawal from the [p]lan and other damages required under ERISA." *Id.* The withdrawal liability was also calculated according to 29 U.S.C. § 1391(b). *Id.* Thus, the court found that this factor weighed in favor of default judgment. *Id.*

Here, the amount the Plan seeks is authorized under the terms of the Trust Agreement, the plan's Withdrawal Liability Procedures, and 29 U.S.C. § 1132(g)(2)(D).[33] It thus is "tailored" to RC's misconduct in withdrawing from the plan and failing to pay withdrawal liability. This factor weighs in favor of default judgment.

---

[32] Mot. – ECF No. 18 at 2; Proposed Judgment – ECF No. 21.

[33] Withdrawal Procedures, Ex. E to Trento Decl. – ECF No. 19-2 at 128–136.

### 4. Factual Dispute or Excusable Neglect (Fifth and Sixth *Eitel* Factors)

The fifth and sixth *Eitel* factors consider the potential of factual disputes and whether a defendant's failure to respond likely was due to excusable neglect. *Eitel*, 782 F.2d at 1471–72. In *Eitel*, there was a factual dispute and excusable neglect. *Id.* at 1472. The defendant disputed material facts in the (untimely) answer and counterclaim. *Id*. Moreover, the defendant's response was late because the parties had previously agreed to "what appeared to be a final settlement agreement," and "[the defendant] reasonably believed that the litigation was at an end[.]" *Id.* Because of his reasonable reliance and prompt response when the agreement dissolved, there was excusable neglect for the defendant's untimely response. *Id.*

Here, the Plan properly served RC with the complaint and the motion for default judgement.[34] Unlike the defendant in *Eitel*, RC has not presented a defense or otherwise communicated with the court. There is no evidence of a factual dispute or excusable neglect. These factors weigh in favor of default judgment.

### 5. The Strong Policy Favoring Decisions on the Merits (Seventh *Eitel* Factor)

The seventh *Eitel* factor is the strong policy favoring decisions on the merits. Although default judgment is disfavored, "[t]he very fact that F.R.C.P. 55(b) exists shows that this preference, standing alone, is not dispositive." *Kloepping,* 1996 WL 75314 at *3. "While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits[,] . . . [as] when a party fails to defend against an action[.]" *Id.*

RC has not appeared or responded to the lawsuit. Litigation on the merits is not possible. Default judgment is thus appropriate. Fed. R. Civ. P. 55(a); *RBS Wash. Blvd.,* 2010 WL 145097 at *4..

*   *   *

In sum, the *Eitel* factors weigh in favor of entering default judgment.

---

[34] Proofs of Serv. – ECF Nos. 10, 31; Schechter Decl. – ECF No. 27 at 2 (¶ 5).

## 6. Relief Sought

The Plan seeks money damages and injunctive relief. The court recommends both.

### 6.1   Money Damages

The first issue is whether the Plan gave fair notice of the damages it seeks. Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against him so that he may make a calculated decision as to whether or not it is in his best interest to answer. *In re Ferrell,* 539 F.3d 1186, 1192–93 (9th Cir. 2008) (rejecting requests for damages and fees because the prayer for relief lacked the "requisite specificity to put defendants on notice that the [plaintiff] sought attorneys' fees and costs on the default judgment"); *Bd. of Trs. of the Sheet Metal Workers Loc. 104 Health Care Plan v. Total Air Balance Co., Inc.*, No. 08-2038 SC, 2009 WL 1704677, at *4 (N.D. Cal. June 17, 2009) (the defaulting defendant's due-process rights were not violated "because the defendant had been served with all of the papers justifying the pension fund's request and leading up to the final determination").

In the complaint, the Plan specified the assessed withdrawal liability of $384,079.00 and asked for interest, liquidated damages, attorney's fees, and costs, specifying the relevant ERISA provisions.[35] This put RC on notice about the damages.

The second issue is whether the Plan established the amount of its damages. "To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit." *Bd. of Trs. of the Laborers Health & Welfare Tr. Fund for N. Cal. v. A&B Bldg. Maint. Co. Inc.,* No. C 13-00731 WHA, 2013 WL 5693728, at *4 (N.D. Cal. Oct. 17, 2013); *Cannon v. City of Petaluma,* No. C 11-0651 PJH, 2011 WL 3267714, at *2 (N.D. Cal. July 29, 2011) ("In order to 'prove up' damages, a plaintiff is generally required to provide admissible evidence (including witness testimony) supporting damage calculations."); *Bd. of Trs. of Bay Area*

---

[35] Compl. – ECF No. 1 at 8–9 (Prayer for Relief).

*Roofers Health & Welfare Tr. Fund v. Westech Roofing,* 42 F. Supp. 3d 1220, 1232 n.13 (N.D. Cal. 2014) ("It is Plaintiffs' burden on default judgment to establish the amount of their damages.").

The Plan seeks (1) $384,079.00 in assessed withdrawal liability, (2) $76,815.80 in liquidated damages, (3) $28,938.25 in interest (calculated at 10-percent simple interest) from April 1, 2020 through December 31, 2020, and daily interest thereafter of $105.23, (4) $10,772.00 in attorney's fees, and (5) $609.95 in costs.[36]

The Plan is entitled to these damages under ERISA § 4301(b) (29 U.S.C. § 1451(b)), which provides that, "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 515 [29 U.S.C. § 1145])." The following damages are available where an employer fails to pay required contributions: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages as provided by the plan (not to exceed 20 percent of the unpaid contributions); and (4) reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2). Therefore, the Plan may recover these types of damages on its claims for unpaid withdrawal liability.

### 6.1.1   Withdrawal Liability

As explained above, under 29 U.S.C. § 1399, a pension plan's sponsor first computes the amount of a withdrawing employer's withdrawal liability. It then notifies the employer of the amount owed, and the employer is entitled, within ninety days of such notice, to ask the sponsor to review any specific matter relating to the determination of the employer's withdrawal liability. 29 U.S.C. § 1399(b). "Any dispute" between an employer and the plan sponsor relating to the employer's withdrawal liability "shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Arbitration may be initiated "within a 60-day period" after the employer is notified of the sponsor's final determination concerning withdrawal liability (or 120 days after the employer requested the sponsor to review the matter, whichever date is earlier). 29 U.S.C. § 1401(a)(1). If arbitration proceedings are not initiated within the time periods prescribed by the statute, "the

---

[36] Mot. – ECF No. 18 at 2.

amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1). If the employer fails to make payment when due and fails to cure the delinquency within sixty days of notice of the delinquency, the plan sponsor is entitled to obtain immediate payment of the entire amount of the employer's outstanding withdrawal liability. 29 U.S.C. § 1399(c)(5).

Here, the third-party administrator assessed RC's withdrawal liability as $384,079.00.[37] The Plan followed the procedures required by the MPPAA for computing the amount and notifying RC of the assessed withdrawal liability. RC did not dispute the amount or make any payment. Thus, the Plan's assessed withdrawal liability of $384,079.00 is binding on RC under ERISA § 4221(b)(1) (29 U.S.C. § 1401(b)(1)).

### 6.1.2   Interest

Interest on the unpaid contributions must be calculated "by using the rate provided under the plan, or, if none, the rate prescribed under [S]ection 6621 of Title 26." 29 U.S.C. § 1132(g). Under the Withdrawal Liability Procedures adopted by the trustees of the plan, the Plan is entitled to 10-percent simple interest on the unpaid withdrawal liability.[38] Where the withdrawal liability is accelerated (as it was here), interest on the total accelerated amount accrues from the due date of the first withdrawal installment payment that was not timely made.[39]

Accordingly, 10-percent interest on the unpaid withdrawal liability of $384,079.00 has been accruing since April 1, 2020, the date of the first missed installment payment. Interest in the amount of $28,938.25 has accrued from April 1, 2020 through December 31, 2020. Interest will continue to accrue daily in the amount of $105.23.

### 6.1.3   Liquidated Damages

Under ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)), liquidated damages may be awarded when (1) the employer is delinquent at the time the action is filed, (2) the court enters a judgment

---

[37] Trento Decl. – ECF No. 19 at 3 (¶ 8); 2/27/2020 Letter, Ex. D to *id.* – ECF No. 19-2 at 98–102.
[38] Withdrawal Procedures, Ex. E to *id.* – ECF No. 19-2 at 131.
[39] *Id.*

against the employer, and (3) the plan provides for an award of liquidated damages. *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996).

Here, RC defaulted on the entire unpaid withdrawal liability because it made no payments. Once a legal action is filed, the Withdrawal Liability Procedures provide for liquidated damages of either (1) 20 percent of the total unpaid withdrawal liability as of the date the action is filed, or (2) interest on the total unpaid withdrawal liability as of the due date of the first withdrawal installment payment that was not timely made, whichever is greater.[40] Here, 20 percent of the total unpaid withdrawal liability as of the date the action was filed is $76,815.80, while interest on the total unpaid withdrawal liability as of the due date of the first withdrawal installment payment that was not timely made is $28,938.35. Since the 20-percent figure is the larger of the two amounts, the Plan is entitled to $76,815.80 in liquidated damages.[41]

### 6.1.4 Attorney's Fees

The Plan seeks $10,772.00 in attorney's fees.[42] An award of fees is mandatory because withdrawal liability is unpaid, and the plan provides for reasonable fees and costs. *Nw. Adm'rs*, 104 F.3d at 257. To determine a reasonable fee award in a case like this, federal courts use the lodestar method. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010). The court calculates a "lodestar amount" by multiplying the number of hours counsel reasonably spend on the litigation by a reasonable hourly rate. *Id.*

#### 6.1.4.1 Reasonable Hourly Rate

A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). The relevant community is "the forum in which the district court sits," which here is the Northern District of California. *Camacho*, 523 F.3d at 979. The party requesting fees must produce

---

[40] *Id.* at 131–32; Trento Decl. – ECF No. 19 at 3 (¶ 10).
[41] Trento Decl. – ECF No. 19 at 4 (¶ 16).
[42] Mot. – ECF No. 18 at 22; Shuldiner Decl. – ECF No. 20 at 2 (¶ 7).

satisfactory evidence — in addition to the attorney's own affidavits or declarations — that the rates are in line with community rates. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v. Multomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

Here, the motion described the qualifications and hourly rates of attorneys Anne M. Bevington ($245), Allan Shuldiner ($230 through April 2020 and $245 hour beginning May 1, 2020), and Craig L. Schechter ($230 through April 2020 and $245 beginning May 1, 2020), and paralegal Wint Huskey ($135 through April 2020 and $145 hour beginning May 1, 2020.).[43] "Saltzman & Johnson has specialized in the representation of multiemployer, collectively bargained employee benefit plans for over 36 years in both the private and public sectors. Over 90 percent of its work involves the representation of employee benefit plans. All of the attorneys have extensive experience resolving legal issues pertaining to multiemployer collectively bargained benefit plans which are jointly managed by representatives of labor and management."[44]

Based on the submissions and the court's knowledge about prevailing rates, the rates are reasonable. *Echague v. Metro. Life Ins. Co.*, 69 F. Supp. 3d 990, 996 (N.D. Cal. 2014) (associate hourly rates of $250 and paralegal hourly rates of $150 are reasonable in an ERISA case); *Reyes v. Bakery and Confectionary Union and Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 853 (N.D. Cal. 2017) (attorney hourly rates of $200 to $625 and paralegal hourly rates of $125 are reasonable in an ERISA case).

### 6.1.4.2   Reasonable Hours Expended

Reasonable hours expended on a case are hours that are not "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A party must provide detailed time records documenting the tasks completed and the time spent. *Hensley*, 461 U.S. at 437, 440; *McCown*, 565 F.3d at 1102; *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 945–46 (9th Cir. 2007).

---

[43] Shuldiner Decl. – ECF No. 20 at 3–5 (¶ 10); Fees, Ex. C to *id.* – ECF No. 20-1 at 9.
[44] Shuldiner Decl. – ECF No. 20 at 3–5 (¶ 9).

The Plan requests attorney's fees for 37.70 hours of attorney time and 10.90 hours of paralegal time for tasks that include preparing the acceleration notice, complaint, accompanying documents, the request for entry of default, the default-judgment documents, and other filings.[45] The hours are reasonable.

\* \* \*

In sum, the Plan's submissions establish that the fees are reasonable, and the undersigned recommends the award of $10,772.00 in attorney's fees from February 21, 2020 through December 31, 2020.

### 6.1.5 Costs of Suit

The Plan asks for costs of $609.95, comprised of (1) a $400 filing fee, (2) $164.77 for process of service of summons and complaint on RC, and (3) $45.18 for legal research. The costs are reasonable.[46]

### 6.2 Injunctive Relief

The Plan asked RC to produce information about its withdrawal liability and now seeks an order compelling the production.[47] As discussed above, under ERISA § 4201 (29 U.S.C.A. § 1399(a)), an employer must provide that information, and an order is appropriate.

### CONCLUSION

The court directs the Clerk of Court to reassign the case to a district judge and recommends that the district judge grant the default-judgment motion and award the following monetary relief: (1) $384,079.00 in assessed withdrawal liability; (2) $76,815.80 in liquidated damages; (3) $28,938.25 in interest (at 10-percent simple interest) from April 1, 2020 through December 31, 2020, and daily interest thereafter of $105.23, (4) $10,772.00 in attorney's fees, and (5) $609.95 in costs.

---

[45] Mot. – ECF No. 18 at 23–24; Shuldiner Decl. – ECF No. 20 at 2 (¶ 7), 6 (¶ 13); Fees, Ex. C to Shuldiner Decl. – ECF No. 20-1 at 9.

[46] Shuldiner Decl. – ECF No. 20 at 6 (¶ 13); Costs, Ex. D to *id.* – ECF No. 20-1 at 10.

[47] 2/27/2020 Letter, Ex. D to Trento Decl. – ECF No. 19-2 at 101; Mot. – ECF No. 18 at 24–25.

The undersigned also recommends that the district judge order RC to comply with its obligations under ERISA § 4219(a) (29 U.S.C. § 1399(a)) to provide information to the Plan to enable the Plan to determine withdrawal-liability issues. The motion describes the information as follows:

> Such information includes, without limitation: each shareholder of Defendant RCK identified in stock certificates or stock registries, all fictitious business names used by Defendant RCK, the addresses for all locations where Defendant RCK conducted business, all other trades and/or businesses in which any owner of Defendant RCK held an interest, lease agreements for Defendant RCK, loan agreements between Defendant RCK and any of its shareholder, financial statements for Defendant RCK, the sale or transference of any assets valued in excess of $20,000, and the identify of all persons or entities that provided professional services to Defendant RCK. such as accountancy, tax and legal services in the past 3 years.[48]

Any party may file objections to this Report and Recommendation with the district judge within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72. Failure to file an objection may waive the right to review of the issue in the district court.

The court directs the Plan to serve RC by mail with a copy of this Report and Recommendation and to file proof of service within three business days.

**IT IS SO ORDERED.**

Dated: April 8, 2021

_____
LAUREL BEELER
United States Magistrate Judge

---

[48] Mot. – ECF No. 18 at 24–25.